UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN GILLIS,

      Petitioner,

v.

                                     CASE NO. 2:10-14249
                                     HONORABLE PAUL D. BORMAN
                                     UNITED STATES DISTRICT JUDGE

KENNETH McKEE,

      Respondent.

_____/

## OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS, (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS

      John Gillis, ("petitioner"), confined at the Gus Harrison Correctional Facility in Adrian, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, petitioner challenges his convictions for two counts of first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b).  For the reasons stated below, the application for a writ of habeas corpus is DENIED WITH PREJUDICE.

## I. BACKGROUND

      Petitioner was convicted of the above offenses following a jury trial in the St. Clair County Circuit Court.  This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Supreme Court's opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

      Just before 2:00 p.m. on May 24, 2001, Steven Albright observed a vehicle pull into

his driveway, and then heard a noise in his garage. Upon investigating, he saw defendant standing in the doorway between the garage and the sunroom. When Albright confronted defendant, defendant closed the door and abruptly left the premises. Albright went back into the house, retrieved a handgun from his bedroom, and sought to confront defendant. As he went out of the front door, he observed defendant driving away in a small white car that he believed to be a Dodge Shadow. Albright then called 911, describing both defendant and the vehicle. After driving his own vehicle around the block for approximately five minutes in an unsuccessful attempt to locate defendant's vehicle, he returned home and called 911 a second time, adding that he had observed a large patch of gray primer on defendant's vehicle.

At 1:51 p.m., Trooper Steven Kramer was driving west on I-94, when he received a "be on the lookout" (BOL) call for a vehicle involved in a home invasion. Trooper Kramer testified that "a couple minutes before 2:00 o'clock" he observed defendant's vehicle, which matched the BOL description, traveling east on I-94. When Kramer first observed the vehicle, it was approximately ten miles from Albright's home. Kramer also testified that it was "a little bit hazy out" when he observed the vehicle. Kramer turned around, pulled up next to defendant's vehicle, and confirmed that both the vehicle and the driver matched the description provided in the BOL.

Kramer activated his vehicle's emergency lights and attempted a traffic stop. Defendant pulled to the shoulder and slowed down to approximately 30 miles per hour, but failed to stop. After driving on the shoulder for about one mile, defendant suddenly accelerated and took an exit off the interstate. After driving on an overpass, defendant quickly reentered I-94, and began driving east in the westbound lanes. [1] Kramer testified that he gave chase, hoping that his emergency lights would alert oncoming traffic to the presence of defendant's vehicle. Defendant stayed on the shoulder of what would be the far left lane for the oncoming traffic, traveling at around 60 to 70 miles per hour. [2] Still driving the wrong way on I-94, he then entered the I-69 eastbound entrance ramp to westbound I-94. Defendant began driving westward in the eastbound lanes of I-69. After driving the wrong way on I-69 for approximately one mile, defendant came upon a curve in the road which had guardrails on both sides and no shoulder. At this point, a vehicle occupied by Nicholas and Gayle Ackerman attempted to pass the vehicles slowing down in front of it by pulling into the left lane. Defendant's vehicle and the Ackermans' vehicle collided almost directly head on. Nicholas and Gayle Ackerman were killed

---

[1] Trooper Kramer testified that the exit ramp from westbound I-94 was clearly marked with "Do Not Enter" and "Wrong Way" signs. (Footnote original).

[2] Kramer testified that defendant "appeared not [to be] generally interfering with traffic or not trying to interfere with traffic other than the fact that he was going the wrong way on the road. (Footnote original).

2

instantly. [3] Trooper Kramer reported the accident at 2:09 p.m., 18 minutes from the time of the BOL call and approximately ten minutes from the time Kramer initially spotted defendant's vehicle. Defendant was prosecuted for two counts of first-degree felony murder, with the predicate felony of home invasion in the first degree. Defendant moved to quash the information on the felony-murder charges, arguing that the crime of home invasion was complete when defendant departed from Albright's home and eluded Albright's pursuit. The trial court denied the motion, holding that the home invasion and the accident were "continuous, uninterrupted by temporary safety action that was taken by this defendant." The trial court also denied defendant's motion for a directed verdict of acquittal, holding that the prosecutor had presented sufficient evidence to allow a reasonable juror to find defendant guilty beyond a reasonable doubt. Following a jury trial, defendant was convicted of two counts of felony murder and sentenced to life in prison without the possibility of parole.

*People v. Gillis,* 474 Mich. 105, 110-12, 712 N.W.2d 419 (2006)(Taylor, Cavanagh, and Kelly, JJ. concurring in part and dissenting in part).

Following his conviction, petitioner appealed to the Michigan Court of Appeals. The Michigan Court of Appeals reversed petitioner's felony murder convictions, ruling that there was insufficient evidence to support petitioner's felony murder convictions, because petitioner had already escaped from the scene of the home invasion, thus, the victims' deaths were not "part of the continuous transaction of or immediately connected to the home invasion." *People v. Gillis,* No. 245012; 2004 WL 1837661, p. 2 (Mich.Ct.App. August 17, 2004)(Meter, J. concurring in part and dissenting in part). The Michigan Court of Appeals further held that the trial judge erred in denying petitioner's request for an instruction on the crime of involuntary manslaughter. *Id.* at pp. 2-3.

The prosecutor appealed the Michigan Court of Appeals' decision to the Michigan Supreme Court, who granted leave to appeal. The Michigan Supreme Court subsequently issued

---

[3] Defendant suffered a closed-head injury and had amnesia regarding the events of May 21, 2001. (Footnote original).

an opinion that reversed the Michigan Court of Appeals' decision:

> We conclude that "perpetration" encompasses acts by a defendant that occur outside the definitional elements of the predicate felony and includes acts that occur during the unbroken chain of events surrounding that felony. Because defendant at the time of the collision was attempting to escape detection after having been identified during the home invasion, a reasonable juror could conclude that he was still "in the perpetration of" the home invasion. We also conclude that the trial court did not err in failing to instruct on involuntary manslaughter, because no rational view of the evidence could support a finding that defendant acted in a grossly negligent manner or had an intent to injure without malice. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to that Court for consideration of defendant's other issues.

*People v. Gillis,* 474 Mich. at 109.

On remand, the Michigan Court of Appeals considered and rejected petitioner's remaining claims. *People v. Gillis,* No. 245012, 2006 WL 1628715 (Mich.Ct.App. June 13, 2006); *lv. den.* 477 Mich. 931, 723 N.W.2d 460 (2006).

The United States Supreme Court subsequently denied petitioner's application for a writ of certiorari. *Gillis v. Michigan,* 550 U.S. 920 (2007).

Petitioner then filed a motion for relief from judgment with the trial court, which was denied. *People v. Gillis,* No. 02-000601-FH (St. Clair County Circuit Court, August 12, 2008). The Michigan appellate courts denied petitioner leave to appeal. *People v. Gillis,* No. 293392 (Mich.Ct.App. November 23, 2009); *lv. den.* 488 Mich. 887, 788 N.W.2d 674 (2010).

In his original and amended habeas petitions, petitioner seeks habeas relief on the following grounds:

> I. The Michigan Supreme Court majority erred, contrary to *Jackson v. Virginia,* by reversing the Michigan Court of Appeals judgment granting Petitioner a new trial where the appellate court implicitly found there was insufficient evidence to support his conviction of felony murder.

4

II. Petitioner is being detained in violation of U.S. Const. Amend. VI, XIV where the Michigan Supreme Court majority held that the trial court correctly instructed the jury, over Petitioner's objection, on a "special" home invasion instruction which misled the jury and resulted in the likelihood that the jury applied the "special" instruction in a way that violated the Constitution.

III. Petitioner is being detained in violation of the U.S. Const. Amend. VI where the Michigan Supreme Court invaded the province of the jury in holding that "no rational juror" could conclude that Petitioner's actions were anything other than murder and erroneously reversed the Michigan Court of Appeals judgment on Petitioner's involuntary manslaughter jury instruction issue.

IV. The Michigan Supreme Court majority, Markman J., erred by misinterpreting the felony murder statute and reformed the home invasion statute contrary to *Bailey v. U.S.* Markman J., applied the terms "escape" and "temporary safety" to the instant case in a way that contradicts his previous definitions, causing a complete "miscarriage of justice."

V. Petitioner is being detained in violation of the United States Constitution, Amendments 6, 14, where the trial court denied Petitioner's claim of newly discovered evidence which violates Petitioner's right to testify on his own behalf and present a defense.

VI. Petitioner is being detained in violation of the United States Constitution, Amendment VI, where the trial court addressed but denied Petitioner's motion for relief from judgment on the jury instruction issue of first degree fleeing and eluding (causing death).

VII. The trial court improperly admitted evidence of Petitioner's prior conviction of fleeing and eluding under MRE 404(b) (where Petitioner did not testify) for the sole purpose to prove that Petitioner acted in conformity therewith, contrary to *Old Chief v. United States*.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

5

> (1)     resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at

410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal system."

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly

deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions

be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)(quoting *Lindh

v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per

curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas

relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*,

541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for

relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer*

*v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must

determine what arguments or theories supported or...could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could disagree that those

arguments or theories are inconsistent with the holding in a prior decision" of the Supreme

Court. *Id.*

## III. DISCUSSION

### A.  Claims # 1 and # 4.  The sufficiency of evidence claims.

In his first and fourth claims, petitioner contends that there was insufficient evidence to

convict him of first-degree felony murder.

Petitioner's primary contention is that there was insufficient evidence to convict him of

first-degree felony murder because he was no longer perpetrating the predicate felony of home

invasion when he collided with the victims' car.  Petitioner argues that the majority of the

Michigan Supreme Court misinterpreted Michigan's felony murder statute when they ruled that

the offense of home invasion continues until the offender makes a successful escape and reaches

a point of temporary safety.  Because petitioner had not yet successfully escaped, the Michigan

Supreme Court ruled that petitioner could properly be charged and convicted of first-degree

felony murder because he had not yet reached a point of temporary safety.

The United States Supreme Court has "repeatedly held that a state court's interpretation

of state law, including one announced on direct appeal of the challenged conviction, binds a

federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  State

7

courts are the "ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975). What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. *See Sanford v. Yukins,* 288 F.3d 855, 862 (6th Cir. 2002). Moreover, a federal court on habeas review must distinguish a sufficiency of evidence claim from state law claims which are disguised as *Jackson* claims. *Id.* (citing *Bates v. McCaughtry,* 934 F.2d 99, 103 (7th Cir. 1991)). This Court must therefore defer to the Michigan Supreme Courts's construction of the elements of state crimes. *See Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998).

The Michigan Supreme Court ruled that for purposes of Michigan's felony murder rule, the underlying predicate felony is not complete until the defendant has escaped, therefore, a death that takes place prior to or during the escape occurs during the "perpetration" of the underlying felony and can thus support a felony murder charge. *People v. Gillis,* 474 Mich. at 115-17. This Court must defer to the Michigan Supreme Court's construction of the elements of first-degree felony murder and therefore cannot grant habeas relief on any claim that the Michigan Supreme Court misinterpreted Michigan's felony murder statute.

To the extent that petitioner does challenge the sufficiency of the evidence to convict him, he would not be entitled to habeas relief.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable

8

doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F.3d 780, 789 (6th Cir. 2003)(citing *People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

The Michigan Supreme Court rejected petitioner's sufficiency of evidence claim:

> The facts elicited at trial support the jury's determination that the murder of the Ackermans was "a continuous part of the commission or perpetration of the felony of home invasion in the first degree." Here, the homeowner, Albright, confronted defendant in the doorway between the garage and the sunroom. Defendant closed the door and abruptly fled. Albright observed both defendant and his vehicle flee from the scene of the home invasion. A reasonable juror could infer from defendant's flight his intent to avoid apprehension by the police. Additionally, he was still in flight from the Albright home when Trooper Kramer spotted him approximately ten minutes after his abrupt flight. Under these facts, a reasonable juror could conclude that defendant had neither escaped nor reached a point of temporary safety when Trooper Kramer attempted the traffic stop. Further, a reasonable juror could conclude that defendant had sped away from Trooper Kramer specifically in order to prevent detection of the home invasion. Therefore, such a juror could also conclude that when defendant collided with the Ackermans' vehicle during his flight from the police, that act was part of the res gestae of the home invasion.

*People v. Gillis,* 474 Mich. at 134 (internal citation omitted).

The Michigan Supreme Court's rejection of petitioner's sufficiency of evidence claim was a reasonable application of *Jackson v. Virginia, supra.* A rational trier of fact could conclude from these facts that petitioner murdered the victims while he was in the process of escaping from the home invasion and that he had not yet reached a point of temporary safety. The evidence established that petitioner was spotted by the police within ten minutes of committing the home invasion. When Trooper Kramer went to pull petitioner over, petitioner lead the police on a high-speed chase down the wrong way of a highway. A rational trier of fact could conclude from these facts that petitioner was attempting to escape from the police to avoid arrest for the home invasion that he had perpetrated only moments earlier. Because a rational trier of fact could conclude from these facts that the murders occurred while petitioner was attempting to escape from the police to avoid being arrested for the home invasion, there was

10

sufficient evidence to support petitioner's first-degree felony murder convictions.

To the extent that petitioner contends that there was insufficient evidence of malice to support his first-degree felony murder convictions, he would likewise not be entitled to habeas relief.  The Michigan Supreme Court has indicated that: "[A] jury can properly infer malice from evidence that a defendant set in motion a force likely to cause death or great bodily harm."  *People v. Aaron*, 409 Mich. 672, 729; 299 N.W.2d 304 (1980); *See also Carines,* 460 Mich. at 759 (internal citation omitted).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner possessed the malice required to support his convictions for first-degree felony murder.  As the Michigan Supreme Court noted in rejecting petitioner's claim that he was entitled to a jury instruction on the lesser offense of involuntary manslaughter, *People v. Gillis,* 474 Mich. at 139, the evidence established that petitioner, while attempting to flee from Trooper Kramer, entered I-94 going the wrong way by driving onto a ramp that was clearly marked with "Do Not Enter" and "Wrong Way" signs.  Another officer who assisted in the chase had to cross over the highway median and began driving in the correct direction on I-94 in order to get in front of petitioner.  Trooper Kramer testified that he and petitioner drove past several vehicles on both I-94 and I-69, all of which were being driven in the correct direction.  The Court further notes that petitioner was driving a small white car on a hazy day, making it difficult for oncoming motorists to see petitioner's vehicle coming in their direction.  As noted by the Michigan Supreme Court, "by driving the wrong way on the interstate on a hazy day, defendant created a 'very high risk' of a head-on collision-a collision that would certainly cause 'death or great bodily harm.'" *People v. Gillis,* 474 Mich. at 139.  Because there was sufficient evidence

11

for a rational trier of fact to conclude that petitioner acted with the requisite malice, he is not entitled to habeas relief on his sufficiency of evidence claim.

Finally, in his amended habeas petition, petitioner contends that the Michigan Supreme Court, applied the terms "escape" and "temporary safety" in a way that contradicted the Michigan Supreme Court's prior definitions of these terms, for purposes of the felony murder statute. Petitioner argues that in so ruling, the Michigan Supreme Court violated the case of *Bouie v. City of Columbia,* 378 U.S. 347, 351 (1964), in which the Supreme Court held that the retroactive application of an unforeseeable state court interpretation of a criminal statute violates a defendant's right to due process. Petitioner further argues that the Michigan Supreme Court's ruling violated the separation of powers between the different branches of Michigan's government.

Respondent contends that this portion of petitioner's claim is procedurally defaulted because petitioner never presented these claims to the state courts and no longer has a remedy to do so.

A state prisoner seeking federal habeas relief must first exhaust his available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c); *Picard v. Connor,* 404 U. S. 270, 275-78 (1971). A prisoner confined pursuant to a Michigan conviction must raise each habeas issue in both the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Mohn v. Bock,* 208 F. Supp. 2d 796, 800 (E.D. Mich. 2002). The exhaustion doctrine, in the context of habeas cases, turns upon an inquiry of whether there are available state court procedures for a habeas petitioner to exhaust his claims. *See Adams v. Holland,* 330 F.3d 398, 401 (6th Cir. 2003).

12

Petitioner acknowledges that he failed to present these claims to the Michigan courts either on direct or post-conviction review. Petitioner has therefore failed to exhaust this portion of his fourth claim with the state courts. Unfortunately, petitioner no longer has any available state court remedies with which to exhaust these claims. Under M.C.R. 6.502(G)(1), a criminal defendant in Michigan is only permitted to file one post-conviction motion for relief from judgment. *See Gadomski v. Renico,* 258 F. App'x. 781, 783 (6th Cir. 2007); *Hudson v. Martin,* 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999). Petitioner has no remaining state court remedies with which to exhaust these sub-claims. If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust. However, the prisoner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal. *Hannah v. Conley,* 49 F.3d 1193, 1195-96 (6th Cir. 1995). A claim of actual innocence will excuse this "cause and prejudice" requirement. *Id.* at 1196, n. 3.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray,* 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in

13

the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner concedes that he has not exhausted his *Bouie* or separation of power claims but argues that he should be excused from exhausting these claims because these issues did not arise until the Michigan Supreme Court issued its decision in petitioner's case on his direct appeal.

An exception to the exhaustion requirement exists only if there is no opportunity to obtain relief in the state courts or if the corrective process is so clearly deficient as to render futile any effort to obtain relief in the state courts. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *Sitto v. Bock*, 207 F. Supp. 2d 668, 676 (E.D. Mich. 2002). A habeas petitioner, however, has the burden of showing that all available state court remedies have been exhausted or that exceptional circumstances exist which would make exhaustion unnecessary. *Doty v. Lund*, 78 F. Supp. 2d 898, 901 (N.D. Iowa 1999).

Petitioner has failed to show that it would have been futile to exhaust his *Bouie* or separation of powers claim in the Michigan courts, because he could have exhausted these claims in the post-conviction motion for relief from judgment that he filed with the state trial court. *See e.g. Smith v. Woods*, No. U.S.D.C. 2:12–CV–14926; 2012 WL 5950369, at 2 (E.D. Mich. November 28, 2012); *Harris v. Booker,* No. U.S.D.C. 04-CV-74766; 2006 WL 2946771, at 6 (E.D. Mich. October 16, 2006). Moreover, although ineffective assistance of appellate

14

counsel might excuse petitioner's failure to raise these claims on his direct appeal, it does not excuse petitioner's own failure to exhaust these claims in his post-conviction appeal. *See Gadomski v. Renico*, 258 F. App'x. at 784.

Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue. *Smith*, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his claim as a ground for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claim is insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review this portion of petitioner's fourth claim on the merits. *See Johnson v. Smith*, 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002). This portion of petitioner's fourth claim is procedurally barred. Petitioner is not entitled to habeas relief on his first and fourth claims.

**B. Claims # 2, # 3, and # 6. The jury instruction claims.**

In his second, third, and sixth claims, petitioner alleges various errors with the jury instructions as given by the trial court.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting

15

conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977). The challenged instruction must not judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United* States, 527 U.S. 373, 391 (1999). Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191. Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

In his second claim, petitioner contends that the trial judge erred in giving the jurors the following special instruction regarding first-degree home invasion:

> Actions immediately connected with the felony of home invasion in the first degree, including attempts to escape or prevent detection[,] are a continuous part of the commission or perpetration of the felony of home invasion in the first degree. Escape . . . ceases to be a continuous part of the felony of home invasion in the first degree if and when the Defendant reaches a point of at least temporary safety.

(Tr. 9/18/2002, p. 851).

The Michigan Supreme Court concluded that the trial court's instruction was a correct reflection of Michigan law. *See People v. Gillis,* 474 Mich. at 133. On remand, the Michigan Court of Appeals likewise determined that the instruction as given by the trial court was in accordance with the Michigan Supreme Court's holding in petitioner's case. *People v. Gillis,* No. 245012, 2006 WL 1628715, at 2.

16

Federal courts are bound by the state courts' interpretation of their own laws. *See*

*Mullaney v. Wilbur*, 421 U.S. at 690-91. The nature of a particular jury instruction that is given

is a matter of state law, and a federal court is not at liberty to grant a writ of habeas corpus

simply because the federal court finds the state court's decision was incorrect under state law.

*Newton v. Million*, 349 F.3d 873, 879 (6th Cir. 2003). Because the Michigan Court of Appeals

and the Michigan Supreme Court both determined that the instruction as given by the trial court

accurately reflected Michigan law regarding the felony murder statute, this Court must defer to

that determination and cannot question it. *See Seymour v. Walker*, 224 F.3d 542, 558 (6th Cir.

2000).

In his third and sixth claims, petitioner contends that the trial judge erred in failing to

instruct the jurors on the crimes of involuntary manslaughter and first-degree fleeing and

eluding as lesser included offenses of the first-degree felony murder charges.

The United States Supreme Court has declined to determine whether the Due Process

Clause requires that a state trial court instruct a jury on a lesser included offense in a non-capital

case. *See Adams v. Smith,* 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003)(citing to *Beck v.*

*Alabama,* 447 U.S. 625, 638, n. 4 (1980)). Thus, a state trial court's failure to give the jury an

instruction on a lesser included offense in a non-capital case is not contrary to, or an

unreasonable application of, clearly established federal law as required for federal habeas relief.

*Id. Beck* has been interpreted by the Sixth Circuit to mean that "the [federal] Constitution does

not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle,* 260

F.3d 531, 541 (6th Cir. 2001). Thus, the failure of a state trial court to instruct a jury on a lesser

included offense in a non-capital case is not an error cognizable in federal habeas review. *Bagby*

17

*v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990); *See also Scott v. Elo,* 302 F.3d 598, 606 (6th Cir. 2002)(habeas petitioner who had been convicted of first-degree murder in Michigan and had been sentenced to life imprisonment without parole was not entitled to habeas relief based upon the trial court's failure to instruct on the lesser offense of involuntary manslaughter).

Moreover, petitioner is not entitled to habeas relief on this claim because any error in failing to give the requested instructions on involuntary manslaughter and fleeing and eluding a police officer was harmless error, at most, because the trial court instructed the jury on second-degree murder as a lesser included offense, but the jury nonetheless convicted petitioner of first-degree murder. *See Abdus-Samad v. Bell,* 420 F.3d 614, 628 (6th Cir. 2005). Petitioner is not entitled to habeas relief on his second, third, and sixth claims.

### C. Claim # 5. The newly discovered evidence claim.

Petitioner next alleges that he has newly discovered evidence in the form of his now-recovered memory, claiming that he now remembers stopping at a gas station after the home invasion, which he argues would amount to a break in the causal chain between that offense and the subsequent deaths of the victims, thus, establishing his innocence of the first-degree felony murder charges. At the time of trial, petitioner claimed that he had amnesia of the events, having suffered a closed head injury from the collision.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id., See also Hence v. Smith*, 37 F. Supp.2d 970,

18

980 (E.D. Mich. 1999). Freestanding claims of actual innocence are not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F.3d 844, 854-55 (6th Cir. 2007)(collecting cases).

Moreover, the Supreme Court's subsequent decision in *House v. Bell*, 547 U.S. 518 (2006) does not alter this Court's adjudication of petitioner's claim, as the Supreme Court again in that case declined to resolve whether a habeas petitioner may bring a freestanding claim of actual innocence. *Id.* at 554-55. Although the Supreme Court in *House* noted that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim," *Id.* (quoting *Herrera,* 506 U.S. at 417), the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside of the death-penalty context. Petitioner is therefore is not entitled to relief for his fifth claim under available Supreme Court precedent. *See Wright v. Stegall*, 247 F. App'x. 709, 711 (6th Cir. 2007).

To the extent that petitioner claims that his right to testify was somehow infringed upon because his alleged prior amnesia at the time of trial of the collision prevented him from testifying, he would not be entitled to habeas relief. A criminal defendant has a constitutional right to take the stand and testify on his own behalf. *Rock v. Arkansas,* 483 U.S. 44, 49-53 (1987). A criminal defendant's right to take the witness stand and testify in his or her own behalf "has several sources in the Constitution" *Id.* at 51, including the Due Process Clause of the Fourteenth Amendment, which guarantees that no one shall be deprived of liberty without due process of law, the Compulsory Process Clause of the Sixth Amendment, which grants a

19

defendant the right to call witnesses in his or her favor, and the Fifth Amendment's privilege against self-incrimination. *Id.* at 51-53. "[J]ust as a State may not apply an arbitrary rule of competence to exclude a material defense witness from taking the stand, it also may not apply a rule of evidence that permits a witness to take the stand, but arbitrarily excludes material portions of his testimony." *Rock,* 483 U.S. at 55. However, a defendant's right to present relevant testimony is not without limitation and the right "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id.* (quoting *Chambers v. Mississippi,* 410 U.S. 284, 295 (1973)).

Numerous cases have held that an amnesiac defendant is not deprived of a fair trial simply because of his inability to testify on his own behalf. *See People v. Palmer,* 31 P.3d 863, 870 (Colo. 2001)(defendant's inability to testify as to the pertinent events surrounding his arrest did not "differ from the situation facing other defendants and thus fails to render Defendant particularly prejudiced by his condition"); *State v. Martens,* 521 N.W.2d 768, 771 (Iowa App.1994) (noting that, "In a way, the inability to personally testify about the facts of an incident is a disability shared to some degree by many defendants due to natural memory attrition or the failure to observe"); *State v. McIntosh,* 137 Wis.2d 339, 404 N.W.2d 557, 561 (Wis. App. 1987)(same).

Finally, as the state trial court concluded in rejecting petitioner's claim on post-conviction review, *See People v. Cress,* No. 02-000601-FH, at p. 2, petitioner's allegedly new evidence that he now remembers stopping at a gas station to purchase four dollars worth of gasoline would not have exonerated him of the first-degree felony murder charges, because petitioner's brief stop to purchase gasoline would not have amounted to a cessation of

20

petitioner's flight from the home invasion, so as to break the causal chain between that offense and the victims' deaths. Petitioner is not entitled to habeas relief on his fifth claim.

### D. Claim # 7. The prior bad acts evidence claim.

Petitioner finally claims that the trial judge improperly admitted evidence that petitioner had previously been involved in a breaking and entering which lead to a police chase.

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. *Bey v. Bagley,* 500 F.3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.,* 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003). Petitioner is not entitled to habeas relief on his seventh claim.

### E. The motion to seek a certified question of state law.

Petitioner has filed a motion asking this Court to present the following certified question to the Michigan Supreme Court:

> Under Michigan law, is a Home Invasion in the first degree (M.C.L.A. 750.110a(2) a continuous crime, or is the crime completed once the perpetrator leaves the property?

"The decision whether or not to utilize a certification procedure lies within the sound discretion of the district court." *Transam. Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir.1995)(citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)). Certification is considered to be "most appropriate when the question is new and state law is unsettled." *Id.* However, federal courts should not "not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Pennington v. State Farm Mut. Auto. Ins. Co,* 553 F.3d 447, 450 (6th Cir. 2009)(quoting *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007)).

In the present case, it is clear from a review of the Michigan Supreme Court's decision in petitioner's case as well as a number of earlier Michigan cases that the Michigan Supreme Court cited to in reaching its decision that Michigan has rejected the interpretation of the felony murder and home invasion statutes that petitioner urges this Court to adopt. Accordingly, the Court will deny petitioner's request for certification. *See e.g. Berrington v. Wal-Mart Stores, Inc.,* 696 F.3d 604, 610-11 (6th Cir. 2012).

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional

22

claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d at 885. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV. CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** the motion for certification of the question of state law. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

PAUL D. BORMAN
UNITED STATES DISTRICT COURT

DATED: 1-18-13